```
UNITED STATES DISTRICT COURT
   MIDDLE DISTRICT OF TENNESSEE
        NASHVILLE DIVISION
```

KIRSTY LAW, QUINCY BULLARD,      )
JOHN HALL, FRANCES PERRY, and    )
RITA LEE on behalf of            )
themselves and all similarly     )
situated,                        )
                                 )
        Plaintiffs,              )
                                 )
    v.                           )   Civil No. 3:05-0836
                                 )   Judge Echols
AMERICAN CAPITAL STRATEGIES,     )
LTD.,                            )
                                 )
        Defendant.               )

## MEMORANDUM

Pending before the Court is "Defendant's Motion to Dismiss Plaintiffs' Amended Class Action Complaint" (Docket Entry No. 35) to which Plaintiffs have responded in opposition (Docket Entry No. 37) and Defendant has replied (Docket Entry No. 41).

### I. FACTUAL BACKGROUND

This is an action under the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. § 2101 *et seq.*, relating to the closure of the facilities of Service Transport, Inc ("Service Transport"). The facts, as set forth in the Amended Complaint and construed in Plaintiffs' favor, are as follows.

Five individuals initiated this putative class action in regard to their termination from employment at Service Transport. Service Transport was owned by S-Tran Holdings, Inc. ("S-Tran Holdings"), which in turn was owned almost entirely by Defendant

1

American Capital Strategies, Ltd. ("American Capital"). (Amended Complaint ¶ 3). Defendant is a publicly traded company engaged in the funding and the purchase of entire companies or controlling equity positions in companies. (Id. ¶ 15).

On May 5, 2005, mass layoffs and/or plant closings took place at five of Service Transport's facilities, namely those located in Memphis, Tennessee, Cookeville, Tennessee, LaVergne, Tennessee, Atlanta, Georgia and Charlotte, North Carolina (collectively, the "facilities"). (Id. ¶ 15). All totaled, more than 750 employees were terminated as a result of the layoffs and plant closings. (Id. ¶ 41). Plaintiffs contend the mass layoffs and/or plant closings took place at the direction of Defendant American Capital. (Id. ¶ 15).[1]

According to the Amended Complaint, the following are the events leading up to the closings and layoffs. In 1999, American Capital invested significant sums of monies in Dixie Transport, Inc. ("Dixie Transport") to carry-out a management buyout of that company and thereafter American Capital owned and controlled Dixie Transport. In 2002, American Capital arranged the purchase of Service Transport by Dixie Transport through a holding company known as STACAS Holdings, Inc., which subsequently changed its name

---

[1]Service Transport and S-Tran Holdings each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code and, as a consequence, are not named as Defendants in this action because a stay has been entered by the bankruptcy court. (Id.).

2

to S-Tran Holdings (Id. ¶¶ 16-17). After the acquisition, American Capital regularly directed the operations of Service Transport. (Id. ¶ 24).

In late April or early May 2005, American Capital made the decision to engage, or approved the decision to engage, bankruptcy counsel for Service Transport. (Id. ¶ 26). During this same timeframe, American Capital engaged, or approved the decision to engage, a firm to conduct an inventory and prepare for the auction of substantially all the assets of Service Transport. American Capital also made the decision to terminate the operations of Service Transport and its employees. (Id. ¶¶ 27-29).

Despite these events, Plaintiffs allege that prior to May 5, 2005, neither American Capital, Service Transport, nor S-Trans Holdings were in the process of liquidation and that during the period immediately prior to when the terminations began on May 5, 2005, Service Transport was engaged in the trucking business. (Id. ¶¶ 35-36).

At the time of the plant closures or layoffs, Service Transport was a business enterprise that employed 100 or more employees, excluding employees who were employed for an average of fewer than 20 hours per week or who had been employed for fewer than 6 of the 12 months preceding the date of the layoffs or closures. Moreover, excluding part-time employees, each of the facilities had 50 or more employees and more than thirty-three

3

percent (33%) of the full-time employees of each of the facilities were terminated. (Id. ¶¶ 10-12).

Plaintiffs contend American Capital was required by the WARN Act to give each of its terminated employees at least sixty (60) days prior written notice of their respective terminations but did not do so. They also contend American Capital, in violation of the WARN ACT, failed to pay them and the other putative Class Members their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for sixty (60) working days following their respective terminations and failed to make the 401(k) contributions and provide health insurance coverage and other employee benefits under ERISA in respect to them for sixty (60) calendar days from the dates of their respective terminations. (Id. ¶¶ 47-48). Defendant contends that at the time of the closures and/or layoffs, its actions were not subject to the WARN Act.

## II. STANDARD OF REVIEW

In evaluating the Amended Complaint under Rule 12(b)(6), the Court must accept as true all of Plaintiffs' allegations and resolve all doubts in Plaintiffs' favor. See Craighead v. E.F. Hutton & Co., 899 F.2d 485, 489 (6th Cir. 1990). The Court should not dismiss the Amended Complaint unless it appears beyond doubt that Plaintiffs cannot prove any set of facts in support of their claims that would entitle them to relief. See id.

4

Generally, when ruling on a motion to dismiss, a Court is limited to looking solely at the allegations of the complaint. However, even where a document is not formally incorporated by reference or attached to a complaint, the Court may nevertheless consider the document where the document is referred to in the Complaint and is central to Plaintiff's claim. See Greenburg v. Life Ins. Co. of Virginia, 177 F.3d 507, 514 (6th Cir. 1999)(insurance policies that were attached to motion to dismiss were not matters outside the pleadings); Weiner v. Klais & Co., 108 F.3d 86, 89 (6th Cir. 1997)(pension plan documents attached to motion to dismiss were not matters outside pleading since referenced in complaint and central to claim). The reason for this rule is that "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." Weiner, 108 F.3d at 89.

### III. LEGAL ANALYSIS

Under the WARN Act, "[a]n employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order" to either the employees or their representatives. 29 U.S.C. § 2102(a)(1). The Act defines an employer as "any business enterprise" that employs at least 100 full-time employees or at least 100 employees who together work at least 4,000 hours per week, exclusive of overtime. Id. § 2101(a)(1).

5

Despite meeting the numbers requirement for status as an employer, Defendant moves to dismiss on the grounds that it was not a business enterprise at the time of the terminations. This is so, Defendant claims, because it was operating as a "liquidating fiduciary" - i.e., an entity that had ceased operating as a going concern and was preparing itself for liquidation - at the time of the closures and as such was not a "business enterprise" within the meaning of the WARN Act.

In support of its position, Defendant relies upon <u>In re United Healthcare Systems, Inc.</u>, 200 F.3d 170 (3d Cir. 1999). There, United Healthcare, a provider of hospital and healthcare services in the Newark area in serious financial straits, informed the New Jersey Department of Health that it was closing its hospital and healthcare facilities. On that same day, it also surrendered its certificates of need, the Department of Health revoked its certificates of need, and United Healthcare filed a voluntary chapter 11 bankruptcy petition, providing its 1300 employees with 60-days' notice of terminations of employment pursuant to the WARN Act. <u>Id</u>. at 173. Within 48 hours after United Healthcare issued the WARN notice, all its patients had either been transferred to another hospital or sent home. Thereafter, United Healthcare employees were unable to perform their regular duties including caring for patients but instead cleaned, took inventory and prepared the company's assets for sale. <u>Id</u>.

Ten days later the Creditors' Committee filed a motion asking the bankruptcy court to order United Healthcare to terminate all its employees immediately with no payment under WARN for the balance of the 60-day notice period. While United Healthcare and the Committee agreed that the employees should be paid for the period they had worked, they disagreed as to whether the employees should be paid for the remainder of the 60-day notice period. The Committee argued that United Healthcare "ceased to be an 'employer' subject to the WARN Act once it surrendered its certificates of need". Id. at 174.

The bankruptcy court rejected the Committee's argument finding that "United Healthcare remained an 'employer' subject to the Act after it filed its bankruptcy because it continued to employ its 1300 person workforce for sixteen days after the Chapter 11 petition was filed". Id. That decision was affirmed by the district court but reversed by the Third Circuit.

In reversing, the Third Circuit framed the issue as being whether United Healthcare was an "employer" under the WARN Act and in making that determination the court indicated it would "consider whether the entity was 'engage[d] in business' during the time prior to the plant closing or mass layoff." Id. at 177. Based upon the findings of fact adduced by the bankruptcy court, the Third Circuit concluded that United Healthcare, while in bankruptcy, "was operating not as a 'business operating as a going concern' but

7

rather as a business liquidating its affairs" and did not "continue[] as an 'employer' within the meaning of the WARN Act when it assumed the role of fiduciary following the filing for bankruptcy." Id. The circuit court took pains to limit its holding to the facts before it, writing:

> Although we find WARN Act liability does not attach under these facts and circumstances, we do not foreclose the possibility that WARN Act liability may apply to other situations where an employer files for bankruptcy and then terminates its employees. An employer as fiduciary will succeed to its WARN Act obligations if an examination of the debtor's economic activities leading up to and during the bankruptcy proceedings reveals that the fiduciary has continued in an "employer" capacity, operating the business as an ongoing concern.

Id. at 178.

United Healthcare, being from the Third Circuit, is obviously not controlling. Nor is it particularly persuasive, given the present procedural posture of this case.

Unlike the Third Circuit, which had before it unchallenged findings of fact from the Bankruptcy Court, this Court has before it an Amended Complaint which must be read in Plaintiffs' favor and, when so read, alleges that at the time of the layoffs and plant closings, Service Transport "was engaged in the trucking business in the ordinary course" and was not in the "process of liquidation." (Amended Complaint ¶¶ 35-36). It is also alleged that, prior to the pivotal day of May 5, 2005, Service Transport had decided to terminate its operation (thus knowing of the planned shutdown), yet did not notify its employees of that eventuality in

8

violation of the WARN Act and, in fact, did not file for bankruptcy protection until some eight days later.

Even if United Healthcare was binding precedent, it would not foreordain the conclusion that Defendant is entitled to relinquish its duties under the WARN Act because it was a "liquidating fiduciary." The court in United Healthcare recognized that in certain circumstances the WARN Act could apply even to an employer which files for bankruptcy and then terminates its employees, at least where the debtor, during the bankruptcy proceedings, operated the business as a going concern. Certainly if there is potential liability under the WARN Act under such a scenario, there is potential liability where, as here, it is alleged the employees were terminated by an ongoing business concern which only later filed for bankruptcy. See, In re Jamesway Corp., 235 B.R. 329, 342-43 (Bankr. S.D.N.Y 1999)(subsequent filing of bankruptcy did not divest employer of duty to provide WARN Act notice where on day board decided to liquidate company it fired its employees because those identified employees were "affected employees" under the Act).

Under the facts and circumstances presented, the Court is unable to find that Service Transport was a liquidating fiduciary[2]

---

[2]Likewise, given the underdeveloped record, there is no reason for the Court to reach the ultimate legal conclusion as to whether being a "liquidating fiduciary" is a defense to a claim under the WARN Act which, after all, "is a remedial statute and must be construed broadly to effectuate its purposes." Snider v.

9

at the time the employment terminations were made. See, <u>Cain v. Inacom Corp.</u>, 2001 WL 1819997 at *1 (Bankr. Del. 2001)(denying motion to dismiss under liquidating fiduciary theory where plaintiffs alleged employer planned and ordered a mass layoff sometime before it filed for bankruptcy and before it liquidated its business, but employer claimed it had ceased doing business except for winding up its affairs and liquidating its assets at time of terminations).

## IV. CONCLUSION

On the basis of the foregoing, Defendant's Motion to Dismiss Plaintiffs' Amended Class Action Complaint (Docket Entry No. 35) will be denied. An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

---

<u>Commercial Fin. Servs., Inc.</u>, 288 B.R. 890, 295 (Bankr. D. Okla. 2002)(collecting cases).